E-FILED
Wednesday, 28 September, 2005  04:06:07 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CAMMILLE SORRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  03-3209 |
| | ) | |
| ILLINOIS ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Defendant's Motion for Summary Judgment.  Plaintiff Camille Sorrell claims that the Defendant, the Illinois Environmental Protection Agency (Agency), retaliated against her for exercising her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and also discriminated against her in violation of Title VII.  This action is limited to events that occurred after January 3, 2003.  Order entered March 5, 2004 (d/e 20).  The evidence presented shows that issues of fact exist regarding whether the Agency retaliated against Sorrell by not temporarily assigning her to a higher position at the

same time that it did so for other similarly-situated employees.  Summary judgment is therefore denied with respect to this one claim for the time period from January 3, 2003, until Sorrell was temporarily assigned to the higher position on August 18, 2003.  Sorrell fails to present evidence to support the remainder of her contentions and so the Agency's Motion is allowed with respect to those claims.

## STATEMENT FACTS

Sorrell began working for the Agency on January 16, 2001, as a Legal Investigator I in the Office of Emergency Response within the Agency's Division of Legal Counsel.  Sorrell is an African-American woman.  The Agency positions of Legal Investigator I, Legal Investigator II, and Legal Investigator Specialist (Legal Investigator Positions) are bargaining unit positions covered by the Collective Bargaining Agreement between the Agency and the Illinois Federation of Public Employees Local 4408 (Union).  Sorrell chose not to be a member of the Union because of her religious beliefs.  Her position, however, is still governed by the Collective Bargaining Agreement.  Plaintiff's Exhibits in Response to the Motion for Summary Judgment (d/e 59) (Plaintiff Exhibits), Exhibit S, Collective Bargaining Agreement effective July 1 2002, through July 30, 2004 (Collective

<u>Bargaining Agreement)</u>, Article I § 1, Appendix A; Article II § 3.

The identity of Sorrell's supervisor is unclear from the evidence. From January 16, 2001, until April 17, 2003, attorney John Waligore assigned work to Sorrell and prepared her employment evaluations. After April 17, 2003, the Agency's Chief Legal Counsel Joseph Svoboda assigned work to Sorrell and evaluated her. The Agency admitted in its Answer to the Amended Complaint that Waligore and Svoboda were supervisors. <u>Defendant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint and Motion to Strike (d/e 25)</u>, ¶ 5. The Agency stated in one discovery response, though, that neither Waligore, Svoboda, nor the Agency Deputy Director William Seith was Sorrell's supervisor. <u>Plaintiff's Exhibits</u>, Exhibit I, <u>Defendant's Answers to Plaintiff's Request to Admit, at 1, Response to Request to Admit No. 1</u>. In another discovery response, the Agency stated that managing attorneys and the Chief Legal Counsel were supervisors with authority over Legal Investigators. <u>Plaintiff Exhibits</u>, Exhibit J, <u>Defendant's Response to Plaintiff's Second Amended Request to Admit, at 3, Response to Request to Admit No. 24</u>. A flowchart of the Agency's hierarchy shows the Office of Emergency Response to be under the Deputy Director. <u>Plaintiff's Exhibits</u>, Exhibit H. Seith was the Deputy

Director in 2003.  The flowchart also shows that the Deputy Director and the Chief Legal Counsel reported directly to the Director of the Agency.  Id.

On December 7, 2001, Sorrell filed a complaint against the Agency in this Court alleging race discrimination, sex discrimination and sexual harassment in violation of Title VII.  Sorrell v. I.E.P.A., Docket No. 01-3373 (Sorrell I).  She alleged numerous instances of unfair treatment and sexual harassment by Waligore, Svoboda and others.  She did not, however, allege a theory of denial of promotion as a basis for her discrimination claim.  Memorandum in Support of Defendant's Motion for Reconsideration (d/e 17), Exhibit C, Sorrell I Amended Complaint.

In May 2002, Sorrell received a negative evaluation from Waligore.  At that time, the Agency decided to place Sorrell on quarterly evaluations.  She received quarterly evaluations in July and October 2002.  The evaluations were again negative.  Sorrell believes that these evaluations were false and motivated by a desire to retaliate against her for exercising her rights under Title VII.

On July 1, 2002, several individuals holding Legal Investigator Positions were temporarily assigned to higher positions and received pay increases commensurate with the higher positions.  Joel Johnson, Susan

Konzelmann, and Dawn Hollise held the position of Legal Investigator II and were temporarily assigned to the position of Legal Investigator Specialist. Lorraine Robinson and Joyce Embree held the position of Legal Investigator I and were temporarily assigned to the position of Legal Investigator II. <u>Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (d/e 56)(Defendant's Memorandum)</u>, Exhibit C, <u>Affidavit of Steve Gumble (Gumble Affidavit)</u>, ¶¶ 12-15. Sorrell was not temporarily assigned to the higher position at this time. On August 22, 2002, Steve Gumble, the Agency's Labor Relations Manager, sent a letter to Gary Leach, Executive Director of the Union, notifying the Union of the temporary assignments. <u>Plaintiff's Exhibits</u>, Exhibit O.

On November 6, 2002, Deputy Director Seith sent an e-mail to Waligore and Svoboda concerning Sorrell's job description. The e-mail appears to be in response to a question concerning whether Sorrell was performing work that was appropriately within the Legal Investigator II job description. Sorrell states that she had asked for her job description to be revised to reflect the work that she was actually performing. The e-mail states:

Really more of a question.  Is what she is being assigned to do truly beyond the job description for a Legal Investigator I?  If not, the fact that those same duties also fall within the description for a Legal Investigator II is really irrelevant in my opinion.  Until she proves herself to be at least competent in her current position, I don't see how she could argue for a "promotion".  Let me know.

--bill

Plaintiff's Exhibits, Exhibit K.

Sorrell should have received quarterly evaluations in January 2003 and in April 2003.  Waligore did not provide her with these two quarterly evaluations.  Sorrell further asked Waligore to meet with her in order to give her detailed guidance on how to improve her work.  Waligore did not meet with her as she requested.  According to Sorrell, Waligore also undermined her work by directing her to disclose documents in response to the Freedom of Information Act (FOIA) requests that should not have been disclosed.

In March 2003, the Union filed a grievance against the Agency charging that Legal Investigator Personnel should have been promoted after working a certain amount of time in a specific grade, consistent with prior practice, but the Agency was not promoting them. The Agency agreed that individuals in these positions should be promoted in a more timely fashion, but explained that the Governor had issued a hiring freeze which prevented

them from promoting these people.   In a compromise, the Agency and Union agreed that individuals in these positions would be temporarily assigned to the next higher level until such time as the Agency could get authority to promote them formally.   Gumble Affidavit, ¶ 7.   On March 1, 2003, the Agency temporarily assigned Legal Investigator I John Meyers to the position of Legal Investigator II until further notice.   Plaintiff's Exhibits, Exhibit O, p. 2.   Gumble states in his Affidavit that Sorrell was not temporarily assigned because she had chosen not to be a member of the collective bargaining unit.   Gumble Affidavit ¶ 8.[1]

Sorrell continued to have conflicts with Waligore.   On April 17, 2003, the Agency changed her assignment so that she no longer worked with Waligore, but worked directly with Svoboda.   At that time, Deputy Director

---

[1]It is unclear how Sorrell could elect to be outside of the collective bargaining unit. Employees who are not Union members are normally still within the collective bargaining unit.  Here, the Collective Bargaining Agreement states that the Union is the sole and exclusive bargaining representative for employees in certain job classifications which include Legal Investigator I.  Collective Bargaining Agreement, Article I § 1, Appendix A; Article II § 3.  The Agreement further indicates that employees covered by the Collective Bargaining Agreement are in the bargaining unit even if they elect not to be members of the Union.  See e.g., Id. Article V § 2.  It is true that Sorrell did not want to associate with the Union for religious reasons.  Such employees do not pay to support the Union, but are still required to pay an amount equal to the amount that other non-union employees pay for Union representation services.  The amount paid by such employees is distributed to a non-religious charity agreed upon by the employee and the Union.  5 ILCS § 315/1(g).  It is not clear from either Illinois law or the Collective Bargaining Agreement why Sorrell would be outside of the collective bargaining unit.

Seith sent Sorrell an e-mail which said:

> Cammille, please don't worry about this issue for your evaluation. Joe and I intend to start you with a "clean slate" in your new position. After 3 months in your new position, we will evaluate your performance for a possible promotion to a Legal Investigator II.

Plaintiff's Exhibits, Exhibit U.

Sorrell presented evidence that a Caucasian woman named Ellen Morrow complained in December 2001 about sexual harassment from Svoboda. The Agency found that the harassment occurred and gave her a transfer. Sorrell filed a complaint against Waligore for sexual harassment on September 13, 2001. The Agency took longer to review her claim and found that it was not supported by sufficient evidence. The Agency did not change Sorrell's work assignments so that she no longer worked directly with Waligore until April 2003, seventeen months after she filed her complaint.

Sorrell and the Agency continued to litigate Sorrell I. The Agency filed a motion for summary judgment. In that summary judgment process, Sorrell and the Agency presented evidence to the Court concerning events that occurred from the time of the application for the position through January 3, 2003. In June 2003, U.S. Magistrate Judge Byron Cudmore issued an order granting the Agency summary judgment on all claims.

<u>Memorandum of Law in Support of Defendant's Motion to Dismiss (d/e 5)</u>, Exhibit C, <u>Sorrell I Order entered June 9, 2003 (Case No. 01-3373 d/e 59)(</u><u>Sorrell I Order)</u>.  Judge Cudmore's Order indicates that Sorrell did not argue a theory of denial of promotion and did not present evidence that other Legal Investigator Personnel received temporary assignments to higher positions while she did not.  Rather, Judge Cudmore stated in his Order that the wrongful conduct on which she based her claims in <u>Sorrell I</u> did not involve any matters that affected her compensation.  <u>Sorrell I Order</u> at 13-20.  Judge Cudmore's decision was affirmed on appeal.  <u>Sorrell v. I.E.P.A.</u>, Case No. 03-2783 (Rule 53 Order entered July 20, 2004).

On August 18, 2003, Sorrell was temporarily assigned to the Legal Investigator II position and received a commensurate increase in her compensation.  The Agency's Labor Relations Manager Steve Gumble stated that management made the temporary assignment when it discovered that Sorrell had not received the temporary assignment along with the other Legal Investigator Personnel who received temporary assignments pursuant to the settlement of the grievance with the Union.  <u>Gumble Affidavit</u>, ¶ 9.  During 2003, Sorrell did not apply for promotion or temporary assignment and has not identified any positions that were open for possible promotion

or temporary assignment.

## ANALYSIS

Sorrell claims that the Agency retaliated against her for filing her claims in Sorrell I by failing to: (1) provide her with quarterly evaluations in January and April 2003, (2) provide her with additional guidance on how to improve her work during this period, and (3) temporarily assign her to the Legal Investigator II position at the time the Agency temporarily assigned the other Legal Investigator Personnel to the next higher position. She also claims disparate treatment because the Agency found Morrow's claim of sexual harassment was substantiated but her claim was not. Further, Morrow received a transfer in response to her sexual harassment claim, but Sorrell had to wait seventeen months before she was moved away from Waligore. The Agency asks for summary judgment on these claims arguing that the evidence does not support a finding of either retaliation or disparate treatment under Title VII.

At summary judgment, the Agency must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Sorrell. Any doubt as to

the existence of a genuine issue for trial is resolved against the Agency. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the Agency has produced evidence showing that it is entitled to summary judgment, Sorrell must present evidence to show that issues of fact remain. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The evidence presented shows that issues of fact remain concerning possible retaliation when the Agency delayed Sorrell's temporary assignment to the Legal Investigator II position; however, as explained below, Sorrell's claim is limited to damages incurred after January 3, 2003, because the judgment entered in Sorrell I precludes recovery for any claims that arose prior to that date.

A.    Disparate Treatment

Sorrell may present either direct or indirect evidence of disparate treatment. McDonnell Douglas v. Green, 411 U.S. 792 (1973). Direct evidence consists of evidence that proves discrimination without the need for inference or presumption. Troupe v. May Department Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). Such evidence includes a direct acknowledgment of discrimination or circumstantial evidence which shows an intent to discriminate. Id.

Under the indirect evidence method, Sorrell must present evidence that tends to establish a <u>prima</u> <u>facie</u> indirect case of a violation of Title VII. To make a <u>prima</u> <u>facie</u> indirect case of disparate treatment, Sorrell must present evidence that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she met the legitimate expectations of her employer, the Agency; and (4) the Agency treated similarly-situated persons outside the protected class more favorably. <u>Green</u>, 411 U.S. at 802; <u>Hildebrandt v. Illinois Dept. of Natural Resources</u>, 347 F.3d 1014, 1030 (7th Cir. 2003). An adverse employment action is a materially adverse change in the terms and conditions of employment. <u>Murray v. Chicago Transit Authority</u>, 252 F.3d 880, 887 (7th Cir. 2001). A materially adverse change includes a demotion, a decrease in wage or salary, a less distinguished title, a material loss of benefits, or material reduction in responsibilities. <u>Oest v. Illinois Dept. of Corrections</u>, 240 F.3d 605, 612-13 (7th Cir. 2001).

If Sorrell presents evidence of an indirect <u>prima</u> <u>facie</u> case, the Agency must present a non-discriminatory reason for its actions. Sorrell must then present evidence tending to show that the stated non-discriminatory reason is a pretext. If she can present evidence that shows that the reason is a

pretext, then summary judgment will be denied.  <u>Hildebrandt</u>, 347 F.3d at 1030.

Sorrell argues that she has presented direct evidence of discrimination. She presents evidence of a list of conduct that she believes shows discriminatory and retaliatory actions that began with the Agency's consideration of her application for employment and continued through August 2003.  She already presented much of the evidence regarding events that occurred before January 3, 2003, in <u>Sorrell I</u>.  Judge Cudmore ruled that the evidence did not constitute direct evidence of intent to discriminate.  <u>Sorrell I Order</u> at 10.  This Court previously stated that Sorrell could attempt to present this evidence in this case, but also stated that this Court would be bound by the legal conclusions of Judge Cudmore in <u>Sorrell I</u>.  <u>Order entered March 5, 2004 (d/e 20)</u> at 2-3.  That case has <u>res judicata</u> effect here.  <u>Brzostowski v. Laidlaw Waste Systems, Inc.</u>, 49 F.3d 337, 338 (7th Cir. 1995); <u>see Order entered January 28, 2004 (d/e 15)</u> at 5. Furthermore, any factual issues that were litigated there and were necessary for the judgment in <u>Sorrell I</u> are determined against Sorrell and in favor of the Agency under principles of collateral estoppel.  <u>Adair v. Sherman</u>, 230 F.3d 890, 893 (7th Cir. 2000); <u>see Order entered January 28, 2004 (d/e 15)</u>

at 5. Thus, the litany of conduct prior to January 3, 2003, which was presented to Judge Cudmore, has already been determined not to constitute direct evidence of discriminatory intent. This Court cannot revisit the issue.

Beyond the evidence addressed by Judge Cudmore, Sorrell presents evidence of additional conduct that she claims directly proves intent to discriminate. Sorrell identifies the fact that the Agency determined that her internal sexual harassment complaint was not substantiated, but found that Morrow's was. She also complains that Morrow was transferred away from Svoboda, but she was required to continue to report to Waligore until April 2003. These facts do not show intent to discriminate without the need to rely on inference or presumption. The circumstances surrounding each of these two sexual harassment complaints were different and the evidence was different. Thus, the fact that the outcomes were different does not demonstrate an intent to discriminate. The evidence regarding the treatment of these two sexual harassment complaints does not constitute direct evidence of discriminatory intent.

She also cites the fact that Waligore and Svoboda did not give her the scheduled quarterly evaluations in January and April 2003, Waligore did not meet with her as requested to give her further guidance on her work, and

14

Waligore undermined her work by ordering her to disclose documents that should not have been disclosed under FOIA. These actions, or omissions, also do not indicate intentional discrimination without inferring or presuming Waligore and Svoboda's motivation.

Finally, she notes that some Legal Investigator Personnel were temporarily assigned to higher positions before she was. This constitutes a difference in treatment, but different treatment alone does not show intent to discriminate without inferring or presuming the motive of the decision makers. As such, the evidence does not constitute direct evidence of intentional discrimination. Sorrell has not presented direct evidence of discrimination.

Under the indirect evidence method, Sorrell has presented evidence that she is in a protected class as an African-American and as a woman. She also must present evidence of adverse employment action. Judge Cudmore found that none of the evidence presented in <u>Sorrell I</u> concerning events prior to January 3, 2003, showed that she suffered an adverse employment action. <u>Sorrell I Order</u> at 13. Those legal conclusions are again controlling here. Thus, that evidence does not help her meet her burden at this step in her <u>prima facie</u> case.

15

Sorrell argues that she suffered two additional adverse employment actions as a result of disparate treatment which were not raised in Sorrell I. She presents evidence that: (1) the Agency found Morrow's claim of sexual harassment to be substantiated, but not hers; and (2) the Agency gave Morrow a transfer away from the alleged harasser, but waited until April 2003 to move her away from Waligore.

These two actions are not adverse employment actions.[2]  Judge Cudmore found in Sorrell I that acts by Waligore which formed the basis of her internal sexual harassment complaint did not create a sexually hostile work environment.  Sorrell I Order at 24-27.  This Court is bound by that factual determination.  Furthermore, because she was not a victim of sexual harassment, the Agency was under no obligation to transfer Sorrell away from Waligore.  The Agency's actions in finding that her internal complaint was not substantiated and in waiting until April 2003, to move her away from Waligore were not adverse employment actions. Sorrell, therefore, fails to establish a claim for disparate treatment under either the direct or indirect method of proof.

---

[2]Issues also exist regarding whether these claims are barred by res judicata or the statute of limitations.  The Court does not reach these issues since the actions are not adverse employment actions.

B.    Retaliation

Sorrell may also use either the direct or indirect method to establish retaliation.  Direct evidence requires her to present evidence that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 642 (7th Cir. 2002).  Under the indirect method, Sorrell must present evidence that: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from her employer; and (4) she was treated less favorably than similarly-situated employees who did not engage in statutorily protected activity.  Id.  If Sorrell can establish these four elements, then the burden shifts to the Agency to come forward with a legitimate, non-retaliatory reason for its adverse action.  Once the Agency presents its reason, the burden shifts to Sorrell to show that the Defendant's reason is pretextual.  Id.

Sorrell claims to have direct evidence of retaliation.  She meets the first element of a direct evidence case; she engaged in protected activity by filing discrimination complaints, including her initial lawsuit in Sorrell I

17

She argues that she suffered several retaliatory adverse employment actions.  First, she cites the events before January 3, 2003, that Judge Cudmore determined were not adverse employment actions.  This Court is bound by that decision.  Those acts were not adverse employment actions. She also argues that she suffered four adverse employment actions in retaliation after January 3, 2003: (1) Waligore and Svoboda did not give her quarterly evaluations in January and April 2003; (2) Waligore did not meet with her, as requested, to provide further guidance on how to perform her job more effectively; (3) Waligore wrongfully directed her to disclose documents that should not have been disclosed under FOIA; and (4) she was not temporarily assigned to a higher position at the same time that other Legal Investigator Personnel were temporarily assigned.[3]

The first three items listed above are not adverse employment actions. The failure to give quarterly evaluations and the failure to give additional

---

[3]Sorrell may not have clearly raised the failure to temporarily assign her under her retaliation theory in the Amended Complaint (d/e 24).  Sorrell focused on Waligore and Svoboda's failures and omissions.  Sorrell, however, is not required to plead legal theories.  Ryan v. Illinois Dept. of Children and Family Services, 185 F.3d 751, 764 (7th Cir. 1999).  The Amended Complaint alleges that she received a temporary assignment in August 2003.  Amended Complaint, ¶ 14.  Because the Amended Complaint gave notice of her claim and she brought support for this aspect of her claim to the attention of this Court in response to the Agency's Motion for Summary Judgment, she can proceed.  Ryan, 185 F.3d at 764.

guidance are not material reductions in compensation or reductions in responsibilities and duties.  Sorrell argues that these actions precluded her from seeking promotion.  She references Seith's November 2002 e-mail in which he questioned how Sorrell could argue for a promotion until she proved that she could perform her current duties competently.  This evidence indicates that Seith had concerns about her abilities.  But, beyond proof of his concern, her argument is based on pure speculation.  She argues that if the quarterly evaluations had been provided, they would have been positive, and if Waligore had met with her as requested to give additional guidance, her work performance would have improved, and, as a result, she would have received a promotion to a hypothetical position that she has not identified.  Such speculation will not overcome summary judgment.  Amadio v. Ford Motor Co., 238 F.3d 919, 927 (7th Cir. 2001).  There must be some evidence of direct connection between the alleged wrongful conduct and the adverse impact on compensation or duties.  Sorrell has no direct connection between the loss of a particular promotion and the absence of these quarterly evaluations, the absence of Waligore's additional guidance, or Waligore's interference with her disclosure of documents under FOIA.  Her speculation is insufficient to overcome summary judgment.

The fourth item, the delay in temporarily assigning her to the Legal Investigator II position, is an adverse employment action.  Other Legal Investigator Personnel effectively received promotions for which Sorrell was arguably eligible based on her tenure in the Legal Investigator I Position. The loss of compensation is an adverse employment action.[4]  Sorrell, however, has no evidence of the causal connection between: (1) her filing and pursuing Sorrell I litigation and her other discrimination complaints, and (2) the delay in her temporary assignment.  She therefore does not have evidence of retaliation under the direct evidence method.

However, Sorrell has sufficient evidence to establish a prima facie case for retaliation under the indirect method.  As explained above, she has presented sufficient evidence on two elements of her prima facie case under the indirect method.  She engaged in protected activity by filing her complaint in Sorrell I and other discrimination complaints, and she suffered

---

[4]This adverse employment action arguably could be the basis of both a retaliation claim and a disparate treatment claim.  Sorrell, in her opposition to the summary judgment motion, however, argues that the Agency subjected her to this adverse employment action as retaliation.  Memorandum of Law in Support of Plaintiff's Motion in Opposition to the Defendant's Motion for Summary Judgment (d/e 59) at 5-6, 15-16, 20.  She also explains in her deposition that her disparate treatment claim is limited to the Agency's disparate treatment of the two sexual harassment complaints.  Defendant's Memorandum, Exhibit A, Deposition of Cammille Sorrell at 91-92, 119-20.  She, thus, has brought support for this aspect of her claim under a retaliation theory, and so may proceed under that theory.  See Ryan, 185 F.3d at 764.

an adverse employment action when she was not temporarily assigned to a higher position as quickly as other Legal Investigator Personnel.

Sorrell has also presented evidence that she was meeting the Agency's reasonable expectations.  Waligore repeatedly gave her negative evaluations and believed that she was not performing her job properly; however, she disputes the accuracy of these evaluations and states that she was meeting the Agency's expectations.  She further says that Waligore and Svoboda did not give her quarterly evaluations in 2003 because they did not want to admit that she was meeting their expectations.  Seith's April 2003 e-mail, quoted above, indicates that he was going to evaluate her work in the spring and summer of the 2003, and consider her for a promotion.  In August 2003, she received the temporary assignment.  One could infer that she received the temporary assignment because Seith found that she was meeting the Agency's expectations.  Given this conflicting evidence, an issue of fact exists regarding whether she meets this element of a prima facie case.

She also has presented evidence that similarly-situated individuals who did not engage in protected activity were treated more favorably.  Legal Investigator Personnel who filed no complaints received temporary assignments in July 2002 and March 2003, several months before she

received her temporary assignment. The Agency argues that Sorrell is not similarly-situated with the other Legal Investigator Personnel.  Employees are similarly-situated if they are comparable in all material respects:

> "A Court must look at all the relevant factors, the number of which depends on the context of the case."  Such factors include whether employees "dealt with the same supervisor" and were "subject to the same standards."  It is also relevant whether the employees had comparable "experience, education and qualifications," provided that the employer took these factors into account when making the personnel decision in question.

Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002), quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000) (internal citations omitted).

Based on the evidence presented, an issue of fact exists regarding whether she was similarly-situated to the other Legal Investigator Personnel. The identity of Sorrell's supervisor is unclear.  The Agency, at one point says, that neither Waligore, Svoboda, nor Seith was her supervisor.  At another point, the Agency says that managing attorneys and the Chief Legal Counsel Svoboda were supervisors.  The ambiguity in the Agency's discovery responses leave the question open.[5]  At a minimum, there is an issue of fact

---

[5]For example, if neither Waligore, Svoboda nor Seith had the authority to supervise Sorrell, then presumably her supervisor was above them.  The only individual over Svoboda and Seith was the Director, who was over the entire Agency.  If the

concerning who was Sorrell's supervisor from January 2003 to August 2003.

Moreover, the Union grievance and the settlement indicates that the Agency treated all of the Legal Investigator Personnel as the same for purposes of these temporary assignments.  If they had the requisite time in grade, they received temporary assignments regardless of other qualifications.  Given that the Agency and the Union treated all Legal Investigator Personnel as a group for purposes of resolving the Union grievance, it is reasonable to conclude that, for purposes of these temporary assignments, all Legal Investigator Personnel are similarly-situated.  Sorrell, therefore, has presented enough evidence to demonstrate that issues of fact exist regarding whether she can make out a prima facie case of retaliation.

The Agency must therefore present a non-discriminatory reason for delaying Sorrell's temporary assignment.  The Agency states that the delay was an oversight because Sorrell was not a member of the Union and so was not part of the grievance process.  According to Gumble, when management became aware of the fact that she had not been temporarily assigned as part of the settlement of the grievance, the Agency temporarily assigned her to

_____

Director was her supervisor, then all of the Legal Investigator Personnel may have had him as their supervisor.

the higher position.

Sorrell must now present evidence that the stated reason is a pretext. A stated reason is a pretext if the evidence indicates that the stated reason is not the actual reason.  <u>Rudin v. Lincoln Land Community College</u>, 420 F.3d 712 (7th Cir. 2005).  The evidence does not need to indicate that the actual reason was an improper one, only that the stated reason is not true. <u>Id.</u>  Here, the inconsistencies in the evidence call into question whether the stated reason is the actual reason.  Gumble says that the delay was essentially an oversight because Sorrell was not part of the Union.  Gumble's statement indicates that management did not realize that Sorrell had not received a temporary assignment along with the other Legal Investigator Personnel.  Once management found out that she had not been temporarily assigned with the others, Gumble states that the Agency gave her the temporary assignment.  Deputy Director Seith, however, told Sorrell in April 2003, that he would review her work after 90 days and consider her for a promotion from Legal Investigator I to Legal Investigator II.  He clearly knew in April 2003 that Sorrell had not received a temporary assignment. Thus, contrary to Gumble's Affidavit, management knew about the supposed oversight months before Sorrell received the temporary

24

assignment. Also, Gumble's statement that the temporary assignments were made to resolve a Union grievance filed in early 2003 does not explain why several individuals received temporary assignments in July 2002, months before the grievance was filed. These inconsistencies call into question whether the stated non-discriminatory reason is a pretext. Summary judgment must be denied on this claim.

Sorrell's claim is limited, however, because of the adverse decision in Sorrell I. Under the doctrine of res judicata, Sorrell was required to bring all possible claims that she could bring against the Agency that arose from the transactions that were the subject of her claims in Sorrell I or be forever barred. Thus, claims that arose before January 3, 2003, are barred. The Seventh Circuit, however, has determined that in cases involving failure to promote or provide increases in compensation, each paycheck is a separate violation that gives rise to a separate claim. Hildebrandt, 347 F.3d at 1028. Thus, the paychecks that Sorrell received after January 2003 are new causes of action. They are not precluded by the doctrine of res judicata. Sorrell can proceed with her retaliation claim with respect to damages she incurred after January 3, 2003, and before August 18, 2003, when she was

temporarily assigned like the other Legal Investigator Personnel.[6]

One final note, the Agency argues that Sorrell's claim is limited to the period from January 3, 2003, to April 17, 2003. This time frame is referenced in her Amended Complaint. Amended Complaint, ¶ 21. The Amended Complaint, however, alleges elsewhere that Sorrell received a temporary assignment in August 2003. Id. ¶ 14. Furthermore, the Agency presented evidence about the reasons why she received a temporary assignment in August 2003 to support its request for summary judgment. Sorrell responded to the issue. The Agency therefore litigated the factual issue of why Sorrell received a temporary assignment in August 2003. Because the Amended Complaint gave the Agency notice of the temporary assignment in August 2003, and the Agency and Sorrell presented evidence concerning the temporary assignment, it is appropriate for this case to address all of Sorrell's claims through August 2003. See Ryan, 185 F.3d at

---

[6]It is important to note that in Sorrell I, Sorrell did not allege theories of retaliation or denial of promotion, and did not present evidence that other Legal Investigator Personnel received temporary assignments in July 2002, but she did not. If she had, then the factual determinations made in Sorrell I would have been controlling in this case under principles of collateral estoppel. Because she did not raise the theories of retaliation or denial of promotion, and did not present evidence about the July 2002, temporary assignments in Sorrell I, Judge Cudmore made no factual determinations regarding the July 2002, temporary assignments that were necessary to his decision. Sorrell, thus, is not precluded from litigating the factual issue here. See Restatement (Second) of Judgments, § 27, cmt. a, illus. 6.

764.  Sorrell's claim therefore extends from January 3, 2003 to August 18, 2003.

THEREFORE, Defendant Illinois Environmental Protection Agency's Motion for Summary Judgment (d/e 55) is ALLOWED in part and DENIED in part.  The Motion is denied with respect to Sorrell's claim of retaliation based on the Agency's decision to provide temporary assignments to other Legal Investigation Personnel in 2002 and early 2003, but not to give Sorrell a temporary assignment until August 18, 2003.  Sorrell may only proceed on claims based on damages she incurred after January 3, 2003, and before August 18, 2003.  The Agency's Motion is otherwise allowed in all respects.

IT IS THEREFORE SO ORDERED.

ENTER:   September 28, 2005.

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE